IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-134-FL

| | |
|---|---|
| DEBORAH HAGANS,<br><br>Claimant,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of<br>Social Security,<br><br>Defendant. | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, DE-19] pursuant to Fed. R. Civ. P. 12(c). Claimant Deborah Hagans ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 18, 2008, alleging disability beginning August 12, 2004. (R. 13). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on October 26, 2010, at which Claimant was represented by counsel and Claimant's husband and a vocational expert ("VE") appeared and testified. *Id.* On November 4, 2010, the ALJ issued a

decision denying Claimant's request for benefits. (R. 13-23). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 6), and submitted additional evidence as part of her request (R. 4, 370-449). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on June 22, 2012. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC"); (2) improper reliance on VE testimony in determining Claimant could transition to other work; and (3) improper assessment that Claimant could sustain gainful activity on a regular and continuing basis. Pl.'s Mem. Supp. Pl.'s Mot. J.

3

Pleadings ("Pl.'s Mem.") at 9, 14, 17. The court addresses arguments one and three together since both arguments implicate the ALJ's RFC determination.

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: reflex sympathetic dystrophy (RSD), hypertension, hyperlipidemia and a cerebrovascular accident (CVA) with a decreased memory and impaired balance. *Id.* The ALJ also found Claimant had nonsevere impairments of depression and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] and has the following limitations: occasionally climb ladders, ropes

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

and scaffolds, occasionally climb stairs/ramps and balance, occasional, but not frequent fingering with her right dominant hand, no exposure to unprotected heights, moving machinery, vehicles or firearms, no exposure to humidity and cold, and no jobs that require fine visual acuity. (R. 16-17). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17-21).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a knitting machine operator. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 51 years old and unemployed. (R. 29-30, 51). Claimant is a high school graduate. (R. 29). Claimant was last employed with the Mayo Knitting Mill for approximately 25 years, where her duties included managing 25 plus sock-knitting machines and loading yarn bobbins on the machines. (R. 30-31). Claimant stopped working at the Mayo Knitting Mill in 2004. (R. 31).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include pain in her right arm and hand and vision impairment in her right eye following a stroke. As for difficulties with her right arm, Claimant testified she developed trigger thumb and a cyst in 2004 and was also diagnosed with carpal tunnel syndrome. (R. 31-32). Claimant underwent a thumb release, cyst removal surgery and carpal tunnel surgery. (R. 32). Following the surgeries on her right arm and hand, Claimant testified

5

that she began experiencing constant pain in her right arm. (R. 33-34). Claimant testified that she has tried different pain medications with no success. (R. 34). Claimant also testified that her right hand is also cold, swollen, and discolored. (R. 35). Claimant testified that she wears a brace on her right hand as a reminder not to touch her hand and that she only shakes hands with others using her left hand. (R. 35). Claimant testified that she cannot get comfortable with the pain and it interferes with her sleep. (R. 36). In addition, Claimant testified that she is not able to unscrew drink bottles, cut her food, pick up the laundry basket and has difficulty dressing herself. (R. 37-38). Claimant testified that she largely relies on her husband or others to cut her food. (R. 37). Claimant testified that she is able to do laundry once the laundry basket is brought to the washing machine (R. 37). Claimant testified the pain in her hand and arm is her most troublesome problem. (R. 44). Claimant testified that she can lift a gallon of milk with her left hand, but that most of her strength was in her right arm. (R. 43).

Claimant testified that in 2008 she experienced a stroke behind her right eye leaving Claimant "totally sightless" in her right eye and producing difficulty with balancing. (R. 38). Claimant testified she can see letters at arms distance with the use of glasses. (R. 49). Claimant testified she has fallen three times in the shower because she is not able to stand well. (R. 39). Claimant also testified that her short-term memory and speech have deteriorated since her stroke. (R. 39).

Claimant testified she has problems sitting due a knee injury occurring back in high school (R. 40). Claimant testified she spends most of the day lying down, but will walk down to the kitchen to eat, drink or smoke. (R. 40). Claimant testified she cannot stand very long, not even 15 minutes, and is not able to walk well due to balance issues from her right eye vision problems. (R. 41). Claimant testified she cannot walk an entire block. (R. 42). Claimant testified she can bend at the

6

waist if she does not fall in the process. (R. 42). Claimant testified she does not drive or read because of her eyesight and mostly watches television during the day. (R. 42). Claimant testified she is no longer suffering from depression and that she just "bite[s] the bullet" with her anxiety. (R. 45).

## III. Witness Testimony at the Administrative Hearing

James Hagans, Sr., Claimant's husband, testified as a witness at the administrative hearing. (R. 46). Mr. Hagans testified that Claimant had problems with her right hand related to a cyst, trigger thumb, and carpal tunnel when she stopped work in 2004. (R. 46). Mr. Hagans testified that Claimant underwent carpal tunnel surgery and developed chronic pain post-surgery, or RSD. (R. 46). Mr. Hagans testified that sometimes she "draw[s] up in a ball where she has so much pain." (R. 46). Mr. Hagans testified that does almost all the cleaning, cooking and laundry, except for the little laundry Claimant does. (R. 46). Since Claimant's stroke, Mr. Hagans testified that Claimant's thought processes are different, she takes longer to respond to questions, has impaired short term memory, and loses her balance and falls on occasion. (R. 47). Mr. Hagans testified that Claimant has fallen in the shower. (R. 47).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 49). After the VE's testimony regarding Claimant's past work experience (R. 51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with nonexertional limitations that include occasional climbing of ladders and stairs and

7

occasional balance; occasional fingering with the right hand; moderate use of the left hand; no working around unprotected heights, dangerous moving machinery, motor vehicles or firearms; no working in environments subject to cold temperatures and humidity; and no work requiring fine visual acuity. (R. 52). The VE responded in the negative. *Id.* The ALJ next asked the VE whether jobs exist in significant numbers in the economy that such hypothetical individual could perform. *Id.* The VE responded that the hypothetical individual could perform jobs such as photo copy machine operator (DOT# 207.685-014), hostess (DOT# 352.667-010), and cashier II (DOT# 211.462-010). (R. 53). Next, the ALJ asked what positions would be available if the individual had no functional use of the right hand. *Id.* The VE responded that such limitation would reduce the available jobs significantly and that no jobs would exist in significant numbers in the local, regional, or national economy. *Id.* The ALJ posed another hypothetical identical to the first hypothetical, except for the change to sedentary work, and asked whether the individual could perform Claimant's past relevant work. *Id.* The VE responded in the negative. (R. 53). The ALJ asked the VE whether jobs exist in significant numbers in the economy that the hypothetical individual could perform. (R. 54). The VE responded in the negative. *Id.* Finally, the ALJ asked the VE whether, assuming Claimant's alleged limitations are credible, Claimant would perform her past relevant work and whether other work would exist in significant numbers in the national economy that Claimant could perform. *Id.* The VE responded in the negative to each question. *Id.*

## DISCUSSION

### I.     The ALJ's RFC determination is supported by substantial evidence.

Claimant contends the ALJ erred in concluding that Claimant has sufficient bilateral manual dexterity and balance to perform light work and, in turn, that Claimant can sustain gainful activity.

8

Pl.'s Mem. at 9, 17. Essentially, Claimant contends that she is more limited in her ability to work than that found by the ALJ. This court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

In finding Claimant has the RFC to perform light work with the specified nonexertional limitations, the ALJ relied on objective medical evidence of record, including physical examinations, treatment notes, opinions regarding Claimant's exertional and nonexertional abilities, Claimant's testimony and diagnostic findings. (R. 17-21). Claimant first contends that the ALJ's finding that Claimant is capable of performing light work is contradicted by evidence showing Claimant is not capable of using her right hand to the extent required by light work. Claimant essentially contends that the ALJ improperly weighed the evidence before him, or that the ALJ's RFC finding is not

9

borne out by the medical record. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusion – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176. "In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and [her] ability to work." *Jones v. Barnhart*, No. 7:06-CV-144, 2007 WL 178222, at *3 (W.D. Va. Jan. 18, 2007) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

Here, the ALJ's RFC determination included various nonexertional limitations. (R. 16). In explaining his RFC determination regarding Claimant's right arm, the ALJ thoroughly summarized the medical evidence and Claimant's allegations regarding pain in her right arm and the limitations produced by said pain. The ALJ acknowledged the following: (1) Claimant underwent three surgical procedures on her right arm and/or hand which was followed by chronic pain in her right arm that persisted despite pain treatments such as steroid injections (R. 17-18, 207, 231-235, 237); (2) a physical exam in March 2005 noted that the right hand was swollen and tender to palpitation near the wrist and assessed as having regional pain syndrome in right hand (R. 17, 235); (3) Claimant reported in May 2005 that the ganglion block had improved her symptoms and noted overall that the pain was less intense and less frequent and it was recommended that Claimant receive another block (R. 18, 208); (4) Claimant discontinued use of her medications, including her pain medication Neurontin with consulting with her doctor (R. 18, 208); (5) a bone scan of Claimant's hands, wrists, and arms in June 2005 showed no evidence of RSD (R. 236); (6) Claimant had full motion of the shoulder, elbow, wrist and digits with no chronic swelling in July 2005 (R. 232); (7) a December 2005 physical examination noted that Claimant had not seen a doctor for several months, had swelling in the right hand, was able to make a fist with a very weak grip and was able to activate all

10

tendons normally (R. 18, 237-38); and (8) in October 2008, Claimant could make a fist less tightly with the right hand and raise her right hand over her head and take it back, but her right wrist movements were 50% less than the left (R. 18, 248).

In addition to the above medical evidence, the ALJ also considered the opinion evidence rendered by treating and non-treating sources and state agency consultants. The ALJ gave great weight to Dr. Wooten's opinion that Claimant has 5% permanent partial disability in her right hand and can return to work doing a job that is not highly repetitive. (R. 21, 231). The ALJ noted that this opinion was from a treating physician that was able to examine Claimant on numerous occasions to determine limitations. (R. 21). The ALJ gave appropriate weight to the opinion of Dr. Krakauer that Claimant can perform light work involving one hand because he was able to physically examine Claimant and review her medical file. (R. 21, 238). Moreover, the ALJ found at step two that Claimant in fact had the severe impairment of RSD. (R. 15).

Finally, the ALJ summarized what evidence he found convincing of Claimant's ability to maintain gainful employment, specifically noting that several doctors "could [not] determine the cause of her degree of pain," Claimant acknowledged that "block injections had made her pain less frequent and intense," there were time periods where Claimant went "months without seeing a doctor and was not even taking over the counter medications for her pain, and the "[m]edications that she was prescribed she stopped taking without consulting her doctor first, which would suggest that her impairment was not as severe as initially alleged." (R. 20). The ALJ clearly considered the nature of Claimant's treatment together with the medical evaluations and Claimant's lack of follow-through or compliance in taking her pain medication. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (holding that an "unexplained inconsistency between the claimant's characterization of the

11

severity of her condition and the treatment she sought to alleviate that condition is highly probative").

The ALJ's decision indicates that he fully considered the medical evidence supporting the existence of pain in Claimant's right arm and hand before determining Claimant maintained the RFC to perform light work with a nonexertional limitation of occasional fingering with the right hand. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept a claimant's subjective evidence to the extent it is inconsistent with the available evidence). In fact, the physical RFC assessment in February 2009 indicates Claimant is unlimited in handling and may perform frequent fingering with the right hand, whereas the ALJ found fingering to be more limited with only occasional fingering of the right hand. (R. 286). The court's review of the record indicates there is some conflicting evidence as to the extent of Claimant's pain, as the ALJ's summary of the medical evidence demonstrates. However, it is the province of the ALJ to resolve inconsistencies in the record leaving this court to determine if the ALJ's determination is supported by substantial evidence. *See Jones*, 2007 WL 178222, at *3. The ALJ's extensive review of the medical evidence relating to Claimant's right hand and arm difficulties indicates that his RFC determination is supported by substantial evidence in this regard and this court will not seek to reweigh the evidence.

Next, Claimant contends that the ALJ's finding that Claimant is capable of performing light work is contradicted by evidence of Claimant's balance and vision difficulties. Once again, the ALJ thoroughly summarized the medical evidence and Claimant's allegations regarding her balance and vision. The ALJ specifically acknowledged the following as to these issues: (1) Claimant

12

experienced a CVA, or stroke, in 2008 (R. 19, 319-321, 323); (2) Claimant stated she was not taking her blood pressure medication in 2008 (R. 19, 319, 321); (3) Claimant underwent a bilateral cartoid ultrasound for her stroke that revealed bilateral atherosclerosis without evidence of flow limiting stenosis, less than 50% internal cartoid artery stenoses bilaterally (R. 19, 324, 361); (4) Claimant had onset of right-sided vision loss (R. 19, 327); (5) Claimant experienced numerous falls (R. 19, 329); (6) the stroke affected her right eye and thought process (R. 19, 338); and (7) Claimant's physical examinations in 2009 and 2010 were unremarkable (R. 305-347). The ALJ also accounted for Claimant's testimony that she has poor balance which limits her ability to walk, has fallen in the shower and upon bending over, is not able to climb stairs, has short-term memory loss, poor speech, and is unable to see well enough to read or drive. (R. 20).

The ALJ clearly acknowledged and gave due consideration to the evidence in the record favorable to Claimant. In her argument as to these physical difficulties, Claimant cites to no treatment records supporting functional limitations beyond those found by the ALJ. In fact, the ALJ's RFC is more favorable with respect to Claimant's exertional and postural limitations than the physical RFC assessment in February 2009. (R. 284-290).

In sum, the ALJ's RFC discussion spans almost five single-spaced pages, is replete with citations to the record and carefully analyzes Claimant's work-related abilities. Moreover, while a state agency consultant found Claimant had the RFC to perform medium work, the ALJ found Claimant capable of light work only. (R. 16, 283-290). Accordingly, the court finds that substantial evidence supports the RFC assessment made by the ALJ and that the correct legal standards were applied. Given that the court finds the ALJ's RFC determination is supported by substantial evidence, Claimant's third contention that the ALJ erred in finding Claimant would sustain a regular

13

work schedule is without merit. Claimant argues that her combination of impairments prevents her from sustaining a regular work schedule of eight hours a day, five days a week. Pl.'s Mem. at 17. However, the ALJ's RFC determination of light work implicitly contained a finding that Claimant could sustain work on a regular and continuing basis and the RFC is supported by substantial evidence. *See Hines*, 453 F.3d at 563 (noting the RFC finding "implicitly contained a finding that [claimant] is able to work an eight hour day"). Therefore, any argument as to this issue is without merit.

## II.   The ALJ's determination at step five is supported by substantial evidence.

Claimant contends the ALJ did not meet its burden at step five in proving that Claimant can perform other work. Pl.'s Mem. at 14. Specifically, Claimant contends that under the job descriptions found in the DOT, she does not have the RFC to perform the positions identified by the VE. *Id.* at 15. This court disagrees.

While the ALJ may meet his burden under step five of the evaluation process by calling a vocational expert to testify to the issue of matching claimant's work skills with available occupations, 20 C.F.R. § 404.1566, the VE's testimony generally should be consistent with the DOT. *See* S.S.R. 00-4p, 2000 WL 1898704, at *2. As such, the ALJ is required to ask the VE whether any possible conflict exists between his testimony and the DOT, and, if the testimony appears to conflict with the DOT, to "elicit a reasonable explanation for the apparent conflict." *Id.* at *4; *see also Oxendine v. Halter*, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his...testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.")

14

(citation omitted). However, the regulations do not require the ALJ or VE to rely on classifications in the DOT at all. *See* S.S.R. 00-4p, 2000 WL 1898704, at *2; *see also Cline v. Chater*, No. 95-2076, 1996 WL 189021, at *4 (4th Cir. Apr. 19, 1996) (stating the ALJ is justified in relying on VE's testimony, even where it may have differed from the job descriptions or classifications in the DOT); *Brock v. Astrue*, 7:06-CV-52-D, 2007 WL 4287721, at *5 (E.D.N.C. Dec. 5, 2007).

Here, the ALJ asked the VE at the start of her testimony to explain any differences between her testimony and the DOT. (R. 51). The VE never testified to any inconsistencies between her testimony and the DOT. (R. 51-54). Therefore, the ALJ attempted to identify any conflict between the VE's testimony and the information in the DOT in conformance with the mandate of SSR 00-4p. Claimant, however, asserts that she cannot perform the three representative jobs identified by the VE with her RFC as determined by the ALJ. Accepting the ALJ's RFC as correct for the limited purpose of her argument at step five, Claimant cites language in the DOT descriptions for each position identified by the VE and contends her RFC does not permit her to perform said jobs. For instance, the Claimant argues the following: (1) the DOT's description for the photo copy machine operator implies that frequent fingering and fine visual acuity are required; (2) the DOT's description for the hostess implies that fine visual acuity and use of vehicles are required; and (3) the DOT's description for the cashier implies that more than occasional fingering and fine visual acuity are required. Pl.'s Mem. at 15-16. Notably, Claimant's argument that these identified positions cannot be performed within the limits of her RFC is solely based on Claimant's own speculation and musing as to what these jobs require. Claimant interprets the DOT's description of activities for each position to require more than her RFC permits, yet cites to nothing in the record or otherwise that supports her argument. *Cf.* S.S.R. 00-4p, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are

15

"collective" descriptions of occupations, "[e]ach occupation represents numerous jobs," and the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job"). The VE was not questioned by Claimant's attorney at the hearing about the jobs she identified. Further, there is nothing in the record or otherwise demonstrating that a conflict exists between the VE's testimony as to these jobs and the DOT.

Here, the ALJ posed adequate hypothetical questions to the VE and was entitled to rely on the VE's testimony at step five. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (stating the purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform"); *see also Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992) (stating that testimony elicited by hypotheticals adequately relating all of claimant's impairments may constitute substantial evidence to support the ALJ's decision). Claimant has not contested the sufficiency of the VE's testimony otherwise. Accordingly, the court finds the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-19] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 9th day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge